# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES L. SIMS, | ) | |
| | ) | Civil Action No. 12-166 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | District Judge McVerry |
| | ) | Chief Magistrate Judge Lenihan |
| VIACOM, INC., | ) | |
| | ) | |
| Defendant. | ) | ECF Nos. 7 & 8 |

## **REPORT AND RECOMMENDATION**

### I. RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by Defendant Viacom, Inc. at ECF No. 7 be granted. It is also respectfully recommended that the Motion for Sanctions filed by Defendant Viacom, Inc. at ECF No. 8 be denied.

### II. REPORT

Presently before the Court is Defendant Viacom, Inc.'s ("Defendant" or "Viacom") Motion to Dismiss a civil action arising out of the same facts and circumstances at issue in two previous Pennsylvania federal district court cases. Both of these cases were dismissed with prejudice, and Plaintiff did not appeal either of these final judgments. Instead, Plaintiff re-filed a new cause of action, attempting to correct the legal and factual deficiencies brought to light by the courts' opinions. This strategy is best demonstrated by the case at bar, filed only ten (10) days after the Honorable Terrence F. McVerry dismissed with prejudice Plaintiff's second federal action. *Sims v. Viacom, Inc.*, 11-cv-0675, 2012 WL 280609, at *6 (W.D. Pa. Jan. 31, 2012). In denying an accompanying motion for sanctions, Judge McVerry admonished Plaintiff

that the denial of sanctions "is not an invitation to continue to file lawsuits against this Defendant which arise out of the same underlying facts." *Sims v. Viacom, Inc.*, Civil Action No. 11-675, 2012 WL 280583, at *2 (W.D. Pa. Jan. 31, 2012). Plaintiff ignored that admonition and filed the above-captioned case.

A. <u>FACTUAL ALLEGATIONS</u>

In 2004, Plaintiff Charles L. Sims ("Sims") and his collaborator, Allison Jordan ("Jordan"), registered a treatment, outlining a proposed half hour reality television show called "Ghetto Fabulous," with the Writers Guild of America. (Complaint, ECF No. 1 at ¶ 6 [hereinafter "ECF No. 1 at ¶ __."].) Jordan submitted "Ghetto Fabulous" to various television companies, cable companies, producers, directors and actors she knew, including Stacey Jenkins ("Jenkins") from Viacom. (ECF No. 1 at ¶¶ 7-8.) Over the next two years, Jenkins and Jordan discussed what "Ghetto Fabulous" meant, how it was like "boot camp" or "charm school," that it needed a celebrity aspect and other similar points. (ECF No. 1 at ¶ 8.) A Submission Release form, a pre-condition to discussing the treatment, was emailed to Jordan and allegedly signed by her; however, neither party can produce the signed release, although a standard release used by Defendant has been provided by Defendant. (ECF No. 1 at ¶ 9.) After about two (2) years of discussions, Jenkins advised Jordan that she had met with other people regarding the reality series, that they were "ready to make an offer," but that they had to wait as there was a change of hands at VH1; Defendant never made an offer. (ECF No. 1 at ¶ 10.)

In April 2007, VH1 aired a reality television show called "Charm School" that lasted three seasons (April 2007, October 2008, and July 2009). (ECF No. 1 at ¶ 11.) Sims admits that he noticed the similarities between his work "Ghetto Fabulous" and the 2007 "Charm School"

2

episodes when the show started. (ECF No. 1 at ¶ 11.) Sims claims the 2009 episodes are distinct from the 2007 and 2008 episodes. Nonetheless, Sims claims the same similarities persist, such as instances of teaching eating etiquette, teaching life etiquette/interaction, wine tasting, a ghetto fabulous host, shopping spree, intercom talks about Charity events, and a luncheon. (ECF No. 1 at ¶ 11.) Sims also claims that the second season of "From G's to Gents" aired in February 10, 2009, contains the same aspects from his treatment copied in "Charm School" except for the shopping spree. (ECF No. 1 at ¶ 12.) Sims ultimately alleges that the presence of the aspects named above in the episodes of "Charm School" and "From G's to Gents" are substantially similar to his treatment that he eventually registered with the United States Copyright Office on October 31, 2011. (ECF No. 1 at ¶¶ 11-12.)

In January 2009, Sims and Jordan filed the first action against Viacom in the Philadelphia County Court of Common Pleas, removed by Viacom to the United States District Court for the Eastern District of Pennsylvania. *Sims v. Viacom, Inc.*, No. 09-3521, 2010 WL 4665969, at *1 (E.D. Pa. Nov. 17, 2010) [hereinafter "*Sims I*"]. The court granted summary judgment for Viacom on the claims for breach of contract, breach of implied contract, and negligent misrepresentation. *Id*. The court held, inter alia, that the Submission Release identified by Viacom was the undisputed contract in issue and that the six month limitations period set forth in the Submission Release barred the breach of contract claim brought by the Plaintiffs. *Sims I* at *3.

In June 2011, Sims, pro se, filed a three count Complaint against Viacom alleging copyright infringement, violation of the Digital Millennium Copyright Act ("DMCA") and unjust enrichment as to the 2007 episodes of "Charm School." (ECF No. 1 at ¶ 14.) The court granted Viacom's Motion to Dismiss the copyright and DMCA claims because they were time-

barred by the three year statute of limitations. *Sims v. Viacom, Inc.*, No. 11-cv-0675, 2012 WL 280609, at *4-5 (W.D. Pa. Jan. 31, 2012) [hereinafter "*Sims II*"]. In addition, the court noted that Sims' copyright claim must be dismissed because he failed to register his work with the Copyright Office, a statutory precondition to filing a copyright infringement action. *Sims II* at *5. The court also found that the unjust enrichment claim was preempted by federal copyright law. *Sims II* at *6. The court further stated that Sims' copyright and DMCA claims were not barred by the doctrine of res judicata because Sims had not registered his treatment with the Copyright Office before filing *Sims I*; therefore, he could not have raised a copyright infringement claim or alleged DMCA violations in *Sims I*. *Sims II* at *4.

On February 10, 2012, ten days after his claims were dismissed in *Sims II*, Sims filed the instant complaint against Viacom. (ECF No. 1.) Sims registered "Ghetto Fabulous" with the Copyright Office at Registration No. TXu 1-781-107 dated 10-31-2011. (ECF No. 1 at ¶ 6.) Now, in his third action based on Viacom's alleged use of his "Ghetto Fabulous" treatment, Sims alleges copyright infringement, violation of the DMCA, and unjust enrichment for the 2009 episodes of "Charm School" and "From G's to Gents." (ECF No. 1 at ¶¶ 15-76.) Presently before the Court is Viacom's Motion to Dismiss Sims' claims, arguing that they are barred by the doctrine of res judicata, time barred per the terms of the Submission Release limiting his claims to six months, and not viable copyright, DMCA, or unjust enrichment claims. (Memorandum of Law in Support of Viacom Inc.'s Motion to Dismiss, ECF No. 10 at 8-29.) Viacom also moves for sanctions pursuant to Federal Rule of Civil Procedure 11 at ECF No. 8.

4

B. LEGAL STANDARDS

MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S. Ct.1937, 1949 (May 18, 2009) (citing *Twombly,* 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

In *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County of Allegheny,* 515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual

matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler*, 578 F.3d at 210.

Thereafter, In light of *Iqbal*, the United States Court of Appeals for the Third Circuit in *Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir. 2009), set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal,*129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips,* 515 F.3d at 234-35. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider

indisputably authentic documents. *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *Golden v. Cook,* 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

C. <u>ANALYSIS</u>

MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Defendant's first argument involves an interesting aspect of res judicata that was not raised by the parties in *Sims II*. Defendant contends that legally, "a plaintiff's failure to comply with a statutory prerequisite to filing a claim in one suit cannot be used to avoid the res judicata bar in a second suit." (Reply Brief in Support of Viacom Inc.'s Motion to Dismiss, ECF No. 22 at 2.) Defendant emphasizes that Plaintiff cannot escape the res judicata bar, and thereby be rewarded, for sitting on his rights for seven years by failing to register his treatment with the Copyright Office. Viacom points out that Plaintiff knew he had an allegedly protectable interest in his treatment because he filed two prior suits claiming that Defendant was using his treatment, yet he neglected to secure the registration with the Copyright Office. (ECF No. 22 at 2.) The United States Supreme Court and the United States Court of Appeals for the Third Circuit, in conjunction with underlying policy considerations, support Defendant's contention, and res judicata will bar all of Plaintiff's claims.

The doctrine of res judicata avoids "piecemeal litigation of claims arising from the same events." *Churchill v. Star Enter.*, 183 F.3d 184, 194 (3d Cir. 1999) (citing *Bd. of Tr. of Trucking*

7

*Emp. of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992)). The application of this doctrine prevents parties from relitigating claims that should or could have been raised in a previous action. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 476 (1998) (citing *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 233 n.5 (1998) ("[A] valid final adjudication of a claim precludes a second action on that claim or any part of it.")). Res judicata "'requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action.'" *Churchill*, 183 F.3d at 194 (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)). All legal claims advancing the same cause of action should be alleged in the same suit. *Id.* at 191.

The first two elements are clearly met in the case at bar. Here, and in *Sims I* and *Sims II*, Sims instituted civil actions against Viacom. Second, both of the previous actions filed by Sims against Viacom ended with a judgment rendered in favor of Viacom.

The third element, that the suits be based upon the same cause of action, has not been precisely defined by the courts for res judicata purposes. *Churchill*, 183 F.3d at 194. The inquiry, however "'turn[s] on the essential similarity of the underlying events giving rise to the various legal claims.'" *Id.* (citing *Centra*, 983 F.2d at 504, and quoting *Athlone*, 746 F.2d at 983). Hence, the United States Court of Appeals for the Third Circuit has stated that "we take a broad view, focus[]ing on the underlying events of the two actions." *Id.* (citing *Athlone*, 746 F.2d at 984). "'Courts should not apply this conceptual test mechanically, but should focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit.'" *Id.* (quoting *Athlone*, 746 F.2d at 984). As discussed below, the law is clear that Plaintiff may not sit on his rights for seven years in failing to register his

treatment with the Copyright Office, while prosecuting two prior civil actions based on the same underlying events giving rise to the case presently before the court.

In 1975, the United States Supreme Court set forth guidelines for a claim based on multiple statutes, some with administrative filing preconditions. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 466 (1975), *superseded by statute on other grounds,* Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071. The *Johnson* Court noted that although a plaintiff may attempt recovery under multiple federal statutes, a plaintiff must preserve each claim independently, while simultaneously avoiding the bar of res judicata.[1] 421 U.S. at 459, 465-66. The Court emphasized that a petitioner may not sleep on his or her rights by failing to manage litigation so as to preserve each claim independently. *Id.* at 466.

In *Churchill v. Star Enter.*, the United States Court of Appeals for the Third Circuit precluded a claim based on the Americans with Disabilities Act ("ADA") because of a prior court decision based on the Family Medical Leave Act ("FMLA"). 183 F.3d at 195. Plaintiff filed her first claim under the FMLA and received a judgment in her favor ("Churchill I"). *Id.* at 187-88. During Churchill I, Plaintiff exhausted her administrative remedies for her ADA claim and received her right-to-sue letter approximately two months after the judgment in Churchill I. *Id.* at 188. The district court noted that Plaintiff's second action filed under the ADA was barred by the doctrine of res judicata. The Third Circuit affirmed noting that because the two suits were based on the same cause of action, the plaintiff was required to consolidate all claims into one case. *Id.* at 195.[2]

---

[1] *Johnson* involved a plaintiff who filed a charge with the EEOC. The district court found that while Plaintiff was waiting for the EEOC to issue a right-to-sue letter, the statute of limitations on his §1981 claim expired. The United States Supreme Court upheld this finding, noting that the plaintiff could not sleep on his rights concerning his non-EEOC claims. 421 U.S. at 466.

[2] The *Churchill* court described procedurally the various options available to the plaintiff to preserve all of her claims. 183 F.3d at 191-193. *See also* 18 James Wm. Moore et al., Moore's Federal Practice § 131.21[3][b] (3d ed. 2012) (All federal rights and theories must be asserted in one action even if one statutory right could not be asserted

Likewise, in *Nernberg v. United States*, 463 F. Supp. 752 (W.D. Pa. 1979), the court was presented with the same cause of action brought under the Federal Tort Claims Act ("FTCA") that had been previously litigated in a separate action under the Tucker Act. The court held that the second action was res judicata, even though Plaintiffs could not have brought the FTCA claim in the first action because one of the plaintiffs had not exhausted his administrative remedies. *Id.* at 753-54. The court noted that plaintiff s should not be allowed "to burden the judicial system with a second lawsuit based upon precisely the same conduct of the [d]efendant." *Id.* at 754. *See also Harding v. Duquesne Light Co.*, Civ. A. No. 95-589, 1995 WL 916926 (W.D. Pa. Aug. 4, 1995) (second complaint barred by res judicata even though plaintiff was unable to allege cause of action in first complaint because of failure to exhaust administrative remedies).

Finally, in a case remarkably similar to the case at bar, the United States District Court for the Eastern District of Pennsylvania noted that although plaintiff could not have asserted copyright claims in his first action because he had not secured copyright registration for the documents at the time, the second suit premised upon the same cause of action would be res judicata. *Bieg v. Hovnanian Enter., Inc.*, Civ. A. 98-5528, 1999 WL 1018578, at *4 (E.D. Pa. Nov. 9, 1999). The court noted that "[t]he question [] is not when plaintiff pursued a right but when the right arose." *Id.* at *4 (citing *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986)). Citing to *Churchill,* the *Bieg* court emphasized the following: "[A] plaintiff cannot sit on his rights. Like an EEOC right to sue letter, registration is a prerequisite to filing suit. It is not, however, a condition of the right to copyright protection which arises at the time of the creation

---

when first suit filed because administrative prerequisites had not been completed. Plaintiff can avoid claim preclusion by 1) not filing suit until all statutory claims can be asserted; 2) motioning for stay until all prerequisites can be met; 3) asking relevant administrative agencies to expedite its procedures.)

of the copyrightable works. . . . Plaintiff waited for at least four years after creating his works before making any attempt to register them."[3] *Id.*

Here, Plaintiff's res judicata bar is not the result of a pending administrative process, but of Plaintiff's own failure to protect his treatment via registration with the Copyright Office when he knew as early as April 2007 that he had an allegedly protectable interest. Plaintiff has slept on his rights and his slumber cannot permit him to undermine the policies and principles of res judicata. *See Johnson*, 421 U.S. at 466. Consequently, his DMCA and unjust enrichment claims are barred as well.

Plaintiff's entire Complaint is barred by the doctrine of res judicata. Hence, the Court will not address Defendant's remaining arguments in support of its Motion to Dismiss.

MOTION FOR SANCTIONS PURSUANT TO RULE 11

In *Sims II,* the Court discussed the Rule 11 legal standard as follows:

> "The legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (citing *Bus. Guides v. Chromatic Commc'ns Enter., Inc.*, 498 U.S. 533, 546-47 (1991)). Reasonableness in the context of Rule 11, is "an objective knowledge or belief at the time of the filing of the challenged paper that the claim was well-grounded in law and fact." *Id.* Sanctions are appropriate only if "the filing of the Complaint constituted abusive litigation or misuse of the court's process." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994).

---

[3] The court denied the motion to dismiss because at the time, it was not clear whether all of the alleged copyright violations occurred before the settlement of the first action, and whether the parties agreed in connection with their settlement to the preservation of any copyright claims. Here, it is clear that when *Sims II* was filed in June 2011, the 2009 alleged infringements that are the subject of the present action had occurred, and that Plaintiff was aware or should have been aware of them by this time. In addition, Plaintiff amended his complaint in *Sims I* six (6) months after the 2009 broadcast of "From G's to Gents" and two (2) months after the 2009 broadcast of "Charm School," and arguably could have included these claims in the amended complaint as early as *Sims I*.

*Sims v. Viacom, Inc.*, 11-cv-0675, 2012 WL 280583, at *1 (W.D. Pa. Jan. 31, 2012). This standard applies equally to attorneys and pro se litigants. *See* Fed. R. Civ. P. 11(b)(2) (attorneys and pro se litigants required to conduct reasonable investigation into legal basis for claims before signing complaint).

Here, the Court does not recommend the imposition of Rule 11 sanctions because the parties had not previously raised the aspect of res judicata at issue in the action presently before the Court. The Court does not find that Plaintiff has abused the federal court system.

### III. CONCLUSION

It is respectfully recommended that the Motion to Dismiss filed by Defendant Viacom, Inc. at ECF No. 7 be granted. It is also respectfully recommended that the Motion for Sanctions filed by Defendant Viacom, Inc. at ECF No. 8 be denied.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.


Dated: November 26, 2012				BY THE COURT:

                                                    _____
                                                    LISA PUPO LENIHAN
                                                    Chief United States Magistrate Judge

cc:
    All Counsel of Record
    Via Electronic Mail